First case called oral argument is people versus Cody. Willie Council. Mr. Miss Stacy. There are three issues in this case, I'm going to talk about the issues one and the supplemental issue, a defendant statement to the police and whether he was proved guilty of count two. And I will stand on my brief on the crankle issue unless you have questions. Um, this case is criminal sexual assault. There are two counts. The parties agreed that that sex occurred, that that sexual intercourse occurred between defendant and AR. Defendant said that the sex was consensual. AR said she was passed out when, when the sex act occurred. Now, shortly, this occurred like sometime in the middle of the night, both day, AR reported it to the police. Defendant was taken by the police in a police car to the police station and interrogated. And I urge your honors, very strongly urge your honors to watch the DVD of the interrogation. After about an hour of talking to Detective Buczyk, defendant said, I need to talk to an attorney. Now, the state has said, he said, I might need to talk to an attorney. But either way, Buczyk believed that defendant needed, or that defendant requested counsel because he said, yes, I think that you do. Then Buczyk continued to talk for two or three minutes to defendant. Um, he kept saying things that were designed to elicit a response from defendant. He said how, um, counsel is not going to just come in and make a wave a magic problem is going to go away. Um, he started talking about some of the evidence. He said, we know you were with your girlfriend at the time. And we know, AR, we know that you said you were with your girlfriend. We know that's a law. Defendant's request for counsel was not honored. Defendant did not reinitiate the conversation. There's at least 40 seconds on the, on the DVD after defendant says, I need to talk to an attorney, where Buczyk just goes off on this monologue. Now, 40 seconds may not seem like a lot of time, but you can say a lot. Are you absolutely sure that the defendant did not initiate the further contact, the further discussions? Yes. After he said, I need an attorney, Buczyk went on for at least 40 seconds. Uh, yeah, I think you do. But you know what? An attorney's not going to come in here and wave a magic wand. And that's when he, he started talking for, like I said, at least 40 seconds. And you can say a lot in 40 seconds. Um, well, let me get my understanding of the facts were that one of the things he said was, okay, we're going to take you to jail. Correct. He said that, um, he told defendant that, you know, okay, you want an attorney, here's, here's evidence. We know you've been lying to us. An attorney's not going to solve your problems. We're going to take you to jail. At one point, Buczyk stood up and pulled out his handcuffs and said, you know, you asked for an attorney. We can't ask you any more questions. Now, despite that, my understanding is the trial court found that he was not in custody when he made the subsequent statement. The trial court did find that, um, I maintain that a reasonable person in defendant's position would have absolutely believed he was in custody. He was taken to the police station after the police had interviewed, um, AR, who was the victim. Um, he was taken there in the police car. The, the parties did not really dispute this. This was just a finding made by the court, but there wasn't a lot of evidence presented on it at the motion to the parties just assumed that he was in custody. And that was the court that came up with this ruling. The statement that he made was made after the police said, okay, if you're going to get a lawyer, we're going to take you to jail. Correct. Okay. But, but he had invoked his right to counsel. And then this all took place with like five minutes, but he said, I need an attorney. And Buczyk said, well, you know, here's, here's a bunch of stuff that he kept talking, trying to, he was an experienced officer. He knew what he was doing by, by continuing to talk to defendant. He was, defendant had been Mirandized. He, Buczyk should not have continued to talk to defendant, whether he said, we're going to take you to jail, whether he said all these other things that he said, because he kept talking, defendant finally said, well, okay, I'll, I'll, can I talk to your boss? He says, now, you know, if you, if you don't want an attorney for your defense as well, no. So he called in detective Burns. Burns had to ask defendant three times, did you want an attorney? Because even he wasn't sure that defendant was absolutely waiting. So even he had to ask defendant three times. Why wouldn't that constitute a waiver? Well, it was by that time, but the waiver was improper or not knowing involuntary because the police initiated the conversation after the initial invocation of the right. After defendant said, I want an attorney, it was all the subsequent action by the two detectives that caused defendant to go ahead and say, well, okay, I wait. And case law is clear that when defendant, even though he's maybe signed the Miranda and said, I don't want counsel, when he says finally, and he makes a clear and unequivocal request for counsel, and no one disputed that this was clear and unequivocal, the cops have to shut up immediately. And they didn't. They have to say, okay, fine, we'll take you back to jail and hold you until an attorney comes. That's not what he did. He said, he said part of that, but he said a whole lot more before, before defendant finally said, okay, I'll go ahead and wait. It was because the cops and not defendant re-initiated the conversation that, that the whole waiver was involuntary and not knowing. What if you say you want an attorney and then you say, in response to a question, do you want an attorney? And you say, no. Okay. You say you want an attorney and you've been talking and then you say, I don't want an attorney. If it's that simple, then, um, then yeah, perhaps the, the, um, the second waiver would be valid, but that's not what happened here. Um, Vucek did not just say, and I don't, let me make this clear. Do you want an attorney? Instead, he went on and on about the evidence and about what was going to happen to defendant and how an attorney was not going to help, um, Mr. Liley. He didn't, he wasn't, um, trying to, to make sure that he understood that it was a request for counsel. He said he understood that it was a request for counsel. And then he proceeded to go on for, like I said, Vucek was an experienced attorney or an experienced detective. He knew what he was doing to finally get defendant to relent and, um, go ahead and waive counsel. This was plain error. And it's, it's very important because the stuff that he said prior to this wasn't all that incriminating, but it was the stuff that came after that was incriminating. The DVD was played for the jury. Um, it was the trial, like I said, was he said, she said there was really, I mean, there was evidence of intercourse, but both of them admitted that there was intercourse. Also, this was his statement. I placed my finger in her vagina was the only evidence to support, um, count two. The count one alleged sexual intercourse, penis in the vagina was not proved by other evidence, but, um, this place in his finger, the only evidence came from his statement that was made after he had waived counsel and then re-invoked his right to counsel. The victim never testified that he placed his finger anywhere. It's true that there was some blood on his shirt, but that could have been explained through regular sexual relations. She was bleeding there again. It could have been explained by just, um, sexual intercourse. There was absolutely nothing besides his statement that supported that count. So we're asking, first of all, you underscored a new trial because, um, the statement wasn't properly admitted. And secondly, to, um, to reverse that count two. Are there questions on these issues or Franklin? I don't believe so. Thank you. Counsel. Counsel. Yeah. Your honor's counsel. May it please the court. My name is Kelly Stacy appearing today on behalf of the people. Certain facts in this case are undisputed. The defendant does not dispute that he was given his Miranda rights. He also does not dispute that he waived his Miranda rights. The state, on the other hand, does not dispute that the defendant asked for an attorney during his initial interview with the propriety of further discussions between the defendant and the police. It's clear that during this initial interview, at some point in time, the defendant during the questioning said, I think I may need to talk to an attorney and detective usage, uh, who was the, uh, interviewing detective, uh, said, okay, fine. You need, I think you probably do need to talk to an attorney at this point. Uh, it was the defendant who asked, well, what's going to happen now? Are you going to hold me in jail? Detective usage then told the defendant, yes, you're going to go back to the jail. Let me ask you the same question. I mean, I really, I guess it doesn't matter a finding of whether he's in custody or not. He wasn't ran does, but the trial court found that he was not in custody. I think you're right. The question that it turns on is whether he was given because if a person is in custody, they feel they're not and did they knowingly and intelligently waive those. I think for this initial interview, the trial court made the proper ruling that he was not in custody until that point where he was told, well, you're not free to leave. Didn't that kind of tip their hand whenever, uh, I mean, regardless of what they told him beforehand, when he said, I want a lawyer, they said, okay, you're going to jail. Well, I don't think that that's exactly how it happened. I think what happened was the detective said, yeah, I think you're right. You probably do need an attorney. Then he was grabbing the handcuffs and the, the defendant asked, well, are you going to hold me in jail? The detective said, yes, you're going to go back there, meaning back to the jail. So the detective asked three times for the defendant to stand up so he could properly cuff him to leave. The defendant refused to do that. Uh, it is true that, uh, the detective said, well, an attorney is not going to make this go away from you. What is the dispute? And we agree, the state agrees that it would be behoove the court to watch the DVD. The entire interview was recorded. Uh, what the defendant claims happened, uh, is that the detective said, well, we know you lied. You weren't with your girlfriend that night, but that's not what happened. The DVD clearly says what the detective, uh, what detective usage told the defendant was, uh, uh, the, I'm sorry, the girlfriend gave a statement to the police, said, we'll be checking with your girlfriend to see if your alibi pans out to find out if you were with her. That's what he said. He never said, well, we know you lied. You weren't with your girlfriend. It's clear that usage didn't know exactly what the girlfriend had told during her interview. Uh, so what did he say to him about getting a lawyer? What did he, well, I believe that during the course of the interview, he said, yeah, I think you probably do need an attorney. Well, at the point he said, okay, I think I need a lawyer. Did he, did he say something to the effect of a lawyer won't help you? Or I think he did say a lawyer is not going to be able to wait match one and make this go away. Okay. And wouldn't that tend to be a, wouldn't you view that as trying to discourage him from getting a lawyer? I don't know that it's trying to discourage him. I think that, uh, the detective may, may have been expressing some frustration, but I think what's key here is at, at no point in his conversation with detective usage, the defendant make any admission at all. There was no statement, nothing at all during that conversation. He was trying to usage essentially was trying to talk him out of pursuing the lawyer. The fact that the defendant did not make any statement that showed success in that is, is not really that relevant to the attempt. Is it? I think it's debatable whether or not that's what the detective was trying to do. I, uh, he was commenting that, uh, an attorney is not going to be able to make the charges go away. You're current trouble go away, but there wasn't any other discussion by the, uh, officer where he asked the defendant any more questions that would lead him to give a confession or, or an inculpatory statement at that time. It was at this point in time, uh, when the defendant refused to stand up to be handcuffed that Sergeant Burns, who was detective usage's supervisor is standing outside of the door. There's security glass. He had already heard the defendant say he needed an attorney. At this point, the defendant says, can I talk to him? Your boss? So then take a boost. It says, well, do you still want an attorney? And the defendant said, no. At this point, the technical usage leaves the room. Sergeant Burns comes in and Sergeant Burns, knowing that the defendant had already asked for counsel, then said, do you still want an attorney? He asked three times whether the defendant wanted an attorney because he knew that if information that would be incriminating would not be admissible at trial. If they violated his right to an attorney, if that's what he wanted to happen, it is true that a defendant can weigh a previously invoked right to counsel. And that's what happened. The defendant during the discussion with Sergeant Burns, that's when the confession came. It was not during the prior interview. It was during this interview. All this hinges essentially on the constitutional consequences of the discussion, not the discussion, the comments that the detective made after invocation of his rights and before the request to talk to the sergeant. Is that correct? I'm sorry, I didn't understand. I'm sorry. Okay. Let me rephrase it or say it louder. This basically hinges on the consequences of the comments that the detective made between defendants' invocation of his right to counsel and his request and to talk to the sergeant. Is that correct? I believe that if those comments had led the defendant to make an inculpatory statement or an admission, that that would be  did not make any inculpatory statement to Detective Vucic. No further questions were asked of Vucic to elicit an incriminatory response. It was only when Detective Burns came in and clearly said, do you want an attorney anymore? He asked the defendant three times to make sure if you're going to talk to me, you need to have an attorney here unless you agree now you don't want the attorney. And there was no time frame in between. I mean, Burns came in right after Vucic went out, right? That's correct. And Vucic had just told him an attorney is not going to do you any good. That's correct. Well, he said an attorney can't make way of the magic wand. So I think in some sense... He didn't just honor his request and say, okay, you want an attorney. He basically said, oh, you want an attorney? Well, okay, I'm going to get the handcuffs out. I'm going to put you in handcuffs. And by the way, attorney's not going to do you any good. Right. I would have to agree with that. You don't think that would influence the defendant on whether or not he wanted to have an attorney? I think in this case it did not. And I think that the DVD clearly shows that it did not. That the defendant had already been given his Miranda rights. He'd already signed a waiver and acknowledgement of each one of those rights. So he knew he had a right to an attorney. He invoked the right to an attorney, which is further evidence that he knew he had that right. Then he laid away that right. And under Edwards v. Arizona and Morgan v. Bradshaw, that's what the proper inquiry is. A two-part inquiry, which is initiated the subsequent discussion. In this case, it's very clear the defendant did. He asked if he could talk to Sergeant Burns. Sergeant Burns comes in, lets him know, hey, if you're going to talk to me, you need an attorney, unless you wait. Do you still want an attorney? The first two times the defendant didn't respond. He couldn't make up his mind. The third time he finally said, okay, I'll go ahead and talk to you. That's correct. And I think that from the sergeant's viewpoint, okay, if you want to talk to me, then you need to have an attorney here unless you wait. So he wanted to make sure if he was going to have a discussion with the defendant, that it was clear. Do you want an attorney or are you waiting now? So that's what happened. So he kept asking him until he said, okay, I'll talk. Well, I think what he did was clarify. All the defendant had to do is to waive that right again is to say, no, I've decided now I don't want to talk to you either. I want to have an attorney here. Well, he did that once and he said, oh, they didn't stop. They said, it won't do you any good. And they brought the other guy in to ask him. Don't you think there's some belief here possibly that they overrode his will to get an attorney? I think that the DVD clearly shows his will was not overborn on that issue. I think it's clear that he knew what his rights were. He knew he was going to be going to jail too. At the point that he talked to Sergeant Burns here, he knew he was going to be going to jail. And in my opinion, that's significant in this case. You don't dispute that this waiver of his rights came after the police initiated further discussion. I think the police did make further comments. Did they ask questions to try to elicit an incriminating response? I don't believe they did. You think that that's necessary? I believe that if it's not, I see my time. Yes, please. Thank you. I believe what the issue is, was anything that he said designed to elicit a response and didn't elicit a response. In this case, it didn't. There was no harm from anything that Detective Husich said. It was only during the subsequent interview with Sergeant Burns that the defendant admitted that he digitally penetrated the 15-year- old victim in this case. And I think that the DVD clearly shows that. I didn't have a chance to get to issue two, but if you have a question on that. No, there's no waiver of that. We have no waiver of that. Thank you. Counsel? Actually, I think Judge Goldberg's kind of hit the nail on the head here. The question is, the result or the constitutional consequences of Butch's comments after defendant asked for an attorney. The point is that there should have been no conversation other than stand up, I'm going to handcuff you. Or fine, I'll let you sit here while I go get an attorney for you or a phone or whatever you need. Under the cases, Butchick can't continue to talk to the defendant. The other point that I want to make is defendant doesn't have to waive his right to counsel to every cop that walks in the door. Once he asserts his right to counsel to Butchick, it carried over to Burns. Burns didn't have to ask defendant three more times. Defendant didn't have to re-assert his right to counsel for Burns. Just as Butchick is gone, that re-assertion of the right to counsel carries over to all the cops. Otherwise, every time defendant asserted his right to counsel, a cop would just leave the room and bring in a new cop and then they'd have to start all over again. But the confession came to Burns. I'm sorry? The confession came to Burns. He wanted an attorney and he said no. Well, he didn't just sit there and again, please watch the DVD. The first time defendant said, well, I don't know. The second time he said, Burns said, do you want an attorney? The defendant said, can you just level with me? And the third time he agreed to talk. But that conversation is totally irrelevant. Totally irrelevant because the damage had already been done. The constitutional right to counsel had already been violated by Butchick. It doesn't matter that Butchick was no longer present in the interrogation room. Once defendant asserts a constitutional right, that assertion applies to all the cops. Like I said, he can't assert a right to counsel and then to Detective A, Detective A leaves the room and the right, once he asserts that right, it carries over to all further interrogation. Finally, there was some discussion on when I was up here before about whether the discussion of going to jail was what persuaded the defendant to go, okay, never mind, I don't want an attorney. But obviously if the defendant already knew he was going to go to jail anyway, then Butchick's pulling out of the handcuffs wasn't what persuaded him to go, oh my gosh, I didn't know he was going to go to jail. Well, never mind, I'll go ahead and talk. And that's all that I have. Any more questions? I don't believe so. Thank you. We appreciate the briefs and arguments of all counsel. We'll take the case under advisement. Thank you.